UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| DEBORAH LOTT, personal representative of the Estate of Sara Kelsey Lott, deceased, et. al. <br><br>      Plaintiffs <br><br> v. <br><br> SCOTTSDALE INSURANCE COMPANY, et. al. <br><br>      Defendants | Civil Action No. 1:11-cv-00362 TSE -TCB |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SCOTTSDALE'S MOTION TO DISMISS THE AMENDED COMPLAINT, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Scottsdale Insurance Company ("Scottsdale"), by undersigned counsel, pursuant to Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure and Rule 7 of this Court's Local Civil Rules, hereby submits this Memorandum of Points and Authorities in support of its Motion to Dismiss the Plaintiffs' Amended Complaint with prejudice, or in the alternative, for Summary Judgment against the Plaintiffs', and states as follows:

## INTRODUCTION

The Amended Complaint includes claims by Palm Pools Service Corp, Palm Pools Service Corp. of Maryland, and ICA/Palm Pools Corp for breach of contract and declaratory judgment.[1]  The only Palm Pools entities which are named in the policies at issue are Palm Pools Management Corp. (the named insured in the primary liability policy) and Palm Pools, Inc. (the named insured in the excess liability policy), as those were the only entities for whom coverage was sought or applications were submitted.  Palm Pools Service Corp, Palm Pools Service Corp. of Maryland, and ICA/Palm Pools Corp. were not insureds under any Scottsdale policy, and therefore cannot be entitled to coverage under any Scottsdale policy.

Even assuming that an ambiguity exists in the contract with regard to which entity was intended to be the named insured, the extrinsic evidence does not support the argument that Scottsdale knew or intended ICA/Palm Pools Corp. to be the named insured, as all of its dealings and correspondence was with Palm Pools Management Corporation. At best, it appears that Palm Pools Management, Inc. would have been the intended insured based upon the applications submitted and the representations made by the insured and its agent.  Moreover, Plaintiffs have failed to present any evidence that Palm Pools Service Corp. of Maryland or Palm Pools Service Corp. were even known to Scottsdale when the policies were issued, much less when coverage was provided to any Palm Pools entity.

---

[1] As set forth in detail below, Scottsdale does not contest that Palm Pools Management, Inc. appears to have been the intended named insured under the Primary Policy.  Although applications were submitted and the Primary Policy was issued stating that "Palm Pools Management, Corp." is the named insured, Scottsdale has since learned that Palm Pools Management Corp. was not a legal entity.  As such, Scottsdale does not contend that the difference in the use of "Inc." and "Corp." is of significance to the issue of which entity was the intended named insured.

Even more telling, Scottsdale's general agent specifically stated that it was her belief, based on the representations made by and on behalf of "Palm Pools Management" that "Palm Pools Management" was a company engaged in pool sales, service and maintenance, and was not performing lifeguarding services. Contrary to the Plaintiffs' assertions, Scottsdale was not advised that ICA Palm Pools was the entity performing the operations that were insured by the insurance contracts. No application for coverage was submitted by the insured for ICA Palm Pools. Even though Scottsdale might have handled claims submitted on behalf of ICA/Palm Pools, the correspondence clearly demonstrates Scottsdale's intention to defend Palm Pools Management. Scottsdale did not intend to extend liability coverage to ICA Palm Pools.

Moreover, Scottsdale could not have "created" coverage by estoppel based upon its prior claims handling of unrelated claims reported under previously issued policies. No Virginia court has ever permitted an insured to create coverage by waiver or estoppel based upon prior claims handling of unrelated claims under policies of insurance other than the policy at issue. For these reasons, the claims asserted by Palm Pools Service Corp, Palm Pools Service Corp. of Maryland and ICA/Palm Pools Corp. must fail as a matter of law.

## PROCEDURAL POSTURE

Plaintiffs Deborah Lott, and Douglas Lott, and as Personal Representatives of the Estate of Sara Kelsey Lott, Deceased (collectively "Lott Plaintiffs"); Lake Ridge Community Swim Club ("Lake Ridge"); and Harleysville Mutual Insurance Company ("Harleysville"), filed a Complaint for declaratory judgment ("DJ Complaint") against Defendants Scottsdale; Palm Pool Management, Inc.; Palm Pools Service Corp.; Palm Pools Service Corp of Maryland; ICA/Palm. Pools Corp. (collectively, "Palm Pools Entities") in the Circuit Court for Prince William County, Virginia, Case No. CL 11-0447-00. (*See* Pl. Compl. at 3.) In their Complaint, the Lott Plaintiffs,

Lake Ridge and Harleysville seek coverage under a liability insurance policy and excess insurance policy issued by Scottsdale to Palm Pools Management, Inc. and Palm Pools, Inc. (*See* Pl. Compl. at 3.)

Scottsdale removed the Declaratory Judgment action to this Court, moved to realign the Palm Pools Entities as plaintiffs for the purposes of determining whether diversity jurisdiction exists. The Court granted that motion on May 9, 2011, and realigned the Palm Pools Entities as party-plaintiffs. At the time that this motion was granted, none of the Palm Pools Entities had made an appearance in the case.

On April 13, 2011, Scottsdale filed a motion to dismiss the claims asserted by the Lott Plaintiffs, Lake Ridge and Harleysville, arguing *inter alia* that those parties did not have standing to bring suit against Scottsdale on behalf of the Pam Pools Entities.

On April 28, 2011, the Lott Plaintiffs, Lake Ridge and Harleysville jointly filed an opposition to Scottsdale's motion to dismiss, and filed a motion for summary judgment with regard to the coverage issues raised in the DJ Complaint.

The Palm Pools entities first appeared in this matter on May 19, 2011, at which time counsel for the Palm Pools Entities entered his appearance and filed a motion seeking leave to join in the motion for summary judgment filed by the Lott Plaintiffs, Lake Ridge and Harleysville. At that point in the proceedings, the Palm Pools Entities had not asserted any affirmative claims against Scottsdale.

On June 17, 2011 this Court heard the Plaintiffs' motion for summary judgment and the Defendant's motion to dismiss, and the issue of whether the Lott Plaintiffs, Lake Ridge and Harleysville had standing to pursue claims against Scottsdale for insurance policies issued to other parties was discussed. After counsel for the Palm Pools Entities indicated an intent to assert

4

claims against Scottsdale, this Court requested that the Palm Pools entities file appropriate pleadings to affirmatively assert such claims.

Plaintiffs filed a motion for leave to file an amended complaint after an agreement could not be reached with Scottsdale concerning a consent order allowing the Plaintiffs to amend the DJ Complaint to include the Palm Pools Entities as party-plaintiffs, and to assert claims against Scottsdale on behalf of those parties, in part because Plaintiffs argued that Scottsdale had waived its standing defense as to the newly added plaintiffs.  Scottsdale filed an opposition to that motion in order to preserve the argument that several of the Palm Pools Entities included in the amended complaint do not have standing to assert such claims because they are not insureds under any Scottsdale policy, and thus do not have standing to bring an action seeking coverage under the policy or to assert a claim for breach of contract.  After hearing argument, the Court granted Plaintiffs'[2] motion for leave to amend, and ordered Scottsdale to file a response to this pleading on or before September 7, 2011.

Although the Court ruled that Scottsdale did not prove that filing the new claims asserted in the amended complaint were clearly futile on the face of the pleading, the Court did not rule that Scottsdale had waived its standing argument.  In addition, it was unclear from the Court's oral ruling whether it concluded that all of the Palm Pools Entities had standing to assert claims against Scottsdale.  Thus, in order to fully present its standing argument and to seek clarification on the Court's ruling, Scottsdale files the instant motion to dismiss the amended complaint.  In addition, Scottsdale incorporates herein by reference all of the arguments previously raised in its initial motion to dismiss the complaint, its opposition to Plaintiffs' motion for summary

---

[2] The claims asserted on behalf of Lake Ridge and Harleysville have subsequently been dismissed from the instant action, leaving only the Lott Plaintiffs and the Palm Pools entities as party-plaintiffs.

judgment, its additional brief in support of its motion to dismiss and opposition to Plaintiffs' motion for summary judgment, and all arguments made in open court in connection with the issues raised in these pleadings.

## ARGUMENT

I.  **PALM POOLS SERVICE CORP, PALM POOLS SERVICE CORP. OF MARYLAND AND/OR ICA/PALM POOLS CORP ARE NOT ENTITLED TO COVERAGE UNDER THE PRIMARY OR EXCESS POLICIES BECAUSE THEY ARE NOT INSUREDS UNDER THE POLICIES**

The claims for declaratory judgment and breach of contract asserted by Palm Pools Service Corp, Palm Pools Service Corp. of Maryland and/or ICA/Palm Pools Corp. in the Amended Complaint must fail as a matter of law because they are not insureds under either policy at issue and, thus, have no legal right or interest in the subject insurance policies.

"The concept of standing--which requires that the plaintiff have a sufficiently personal stake in the outcome of the litigation--forms an indispensable part of the Article III case-or-controversy requirement." *Miller v. Augusta Mut. Ins. Co.*, 157 Fed. Appx. 632, 635-36 (4th Cir. 2005) (*citing Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976)); *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005). "Whether a plaintiff in federal court has standing to maintain an action is a question of federal, not state law." *Miller*, 157 Fed. Appx. at 636 (*citing Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 804, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) ("[s]tanding to sue in any Article III court is, of course, a federal question which does not depend on the party's prior standing in state court.")); *White v. National Union Fire Ins. Co.*, 913 F.2d 165, 167 (4th Cir. 1990) ("Federal standards guide the inquiry as to the propriety of declaratory relief in federal courts, even when the case is under the court's diversity jurisdiction."). "A declaratory judgment may be issued only if the Article III case-or-controversy requirements are satisfied." *Miller*, 157 Fed. Appx. at 637 (*citing*

28 U.S.C.A. § 2201(a) (West 1994) (stating that "[i] n a case of actual controversy within its jurisdiction," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration"); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S. Ct. 461, 81 L. Ed. 617 (1937) (explaining that the "actual controversy" requirement is synonymous with the Article III requirements)). "Although declaratory judgments are frequently sought in advance of the full harm expected, they must still present a justiciable controversy rather than abstract, hypothetical or contingent questions." *Miller*, 157 Fed. Appx. at 637 (*quoting St. Thomas-St. John Hotel & Tourism Ass'n v. United States Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000) (internal quotation marks omitted)). "Whether the subject of a declaratory judgment action is a sufficiently live controversy rather than an abstract question is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." *Miller*, 157 Fed. Appx. at 637 (*quoting Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941) (internal quotations omitted)). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*; see *White*, 913 F.2d at 167. "The test for a case or controversy, the constitutional inquiry, is whether the dispute is definite and concrete, touching the legal relations of parties having adverse legal interests." *White*, 913 F.2d at 167.

In Virginia, "the elements of a breach of contract action are: 1) a legally enforceable obligation of a defendant to a plaintiff; 2) the defendant's violation or breach of that obligation; and 3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004) (citations omitted). The Virginia Supreme Court has

explained that a legally enforceable obligation arises under contract law only when the parties are privies to the contract. *17th St. Assocs., LLP v. Markel Int'l Ins. Co.*, 373 F. Supp. 2d 584, 597 (E.D Va. 2005). "It is settled in the Commonwealth [of Virginia] that no cause of action exists in cases [involving a claim solely for economic losses] absent privity of contract." *Johnson v. Hart,* 279 Va. 617, 624-25, 692 S.E.2d 239, 243 (2010) (quoting *Copenhaver v. Rogers*, 238 Va. 361, 366, 384 S.E.2d 593, 595, 6 Va. Law Rep. 499 (1989)). An action on a contract must be brought in the name of the party in whom the legal interest is vested. *17th St. Assocs., LLP,* 373 F. Supp. 2d at 597 *quoting Cemetery Consultants, Inc. v. Tidewater Funeral Directors Ass'n,* 219 Va. 1001, 1003, 254 S.E.2d 61, 62 (1979). Third parties may only sue where the third party seeking enforcement of the contract "show[s] that the parties to the contract clearly and definitely intended it to confer a benefit upon him." *Ogunde v. Prison Health Servs.*, 274 Va. 55, 63, 645 S.E.2d 520, 525 (2007) (quoting *Ward v. Ernst & Young*, 246 Va. 317, 330, 435 S.E.2d 628, 634, 10 Va. Law Rep. 305 (1993); *Professional Realty Corp. v. Bender*, 216 Va. 737, 739, 222 S.E.2d 810, 812 (1976)).

Scottsdale issued a primary commercial general liability insurance policy, policy no. CLS1525937 to "Palm Pools Management Corporation"[3] for the period from June 9, 2008 to June 9, 2009 (the "Primary Policy"). (Compl. at ¶ 20; Compl. at Ex. 4.) The Declarations Page

---

[3] According to the application for insurance submitted by Warren Cox on behalf of Palm Pools Management, coverage was sought for "Palm Pools Management Inc." for the 2008-2009 policy year. The named insured in the Primary Policy is "Palm Pools Management, Corp." Scottsdale concedes that there is no actual difference between Palm Pools Management, Inc. and Palm Pools Management Corp., and that the use of "Corp." instead of "Inc." was a misnomer. Consequently, despite the slight difference in the names of the entities, Scottsdale concedes as it must that Palm Pools Management, Inc. was the named insured in the Primary Policy, and thus has standing to seek a declaration regarding coverage and assert a breach of contract action against Scottsdale. Scottsdale does not concede, however, that Palm Pools Management, Inc. is entitled to coverage under the Primary Policy or Excess Policy for the reasons set forth in section III below.

on the Primary Policy, Form OPS-D-1 12-00 "Common Policy Declarations," lists the named insured as "Palm Pools Management Corporation." (Compl. at ¶ 20; Compl. at Ex. 4.) Moreover, Section II of the Primary Policy, "Who Is An Insured" states:

> SECTION II -WHO IS AN INSURED
>
> 1.  If you are designated in the Declarations as:
>
>     . . .
>
>     c.  A limited liability company, you are an insured. Your members are also Insureds, but only with respect to the conduct of your business. Your managers are Insureds, but only with respect to their duties as your managers.
>
>     . . .
>
> No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured In the Declarations.

(Compl. at Ex. 4, CG 00 01 12 07 at 9.)   According to the insuring language in the Primary Policy, Scottsdale agreed to pay sums that the named insured becomes legally obligated to pay as damages because of "bodily injury" caused by an "occurrence" to which this insurance applies. (Compl. at Ex. 4, CG 00 01 12 07 at 1 (emphasis supplied).)   The coverage afforded by the Primary Policy is limited by a "Designated Operations Exclusion" endorsement, which bars coverage for bodily injury arising out of any operations that are "not related to pool sales, service, or maintenance."  (Compl. ¶ 22.)

In addition to the Primary Policy, Scottsdale issued an excess liability policy, policy no. XLS0052790 to Palm Pools Inc.[4] for the period from June 9, 2008 to June 9, 2009 (the "Excess

---

[4] The Excess Policy lists the named insured as Palm Pools Inc.; however, no entity is known to have existed under that name.  Because the Excess Policy is a "follow form" policy, which follows form to the Primary Policy issued to Palm Pools Management, it appears that the

Policy").   (Compl. ¶ 21.)   Palm Pools Inc. was the entity listed as the named insured in the

Excess Liability Declarations.   (Compl. at Ex. 5, XLS-D-1 12-00)   The Excess Policy provides

that the words "you" and "your" as used in the Excess Policy refer to the "Named Insured"

shown in the Declarations, as well as and any person or organization qualifying as an "Insured"

in the "Underlying Insurance" (i.e., the Primary Policy).   (Compl. at Ex. 5, Form XLS-P-2 (7-96)

at 1.)   The Excess Policy further states:

> I.      COVERAGE
>
> This Policy is excess insurance and, except as otherwise stated in
> this Policy, follows the terms, conditions, exclusions, definitions
> and endorsements of the "Underlying Insurance" described in
> ITEM 5. of the Declarations.
>
> A.  We will pay on behalf of the insured those sums in excess of
>     the "Underlying Insurance" which the insured becomes legally
>     obligated to pay as damages arising out of an occurrence or
>     accident during the policy period stated in ITEM 2. of the
>     Declarations (the POLICY PERIOD).

(Compl. ¶ 22; Compl. at Ex. 5, Form XLS-P-2 (7-96) at 1.)

Based on the plain language of the Primary Policy and the Excess Policy, Palm Pools

Service Corp, Palm Pools Service Corp. of Maryland and ICA/Palm Pools Corp. are not insureds

under either policy because none of these entities were listed as the named insured on the

Primary Policy or Excess Policy.   (*See* Compl. at Ex. 4; Compl. at Ex. 5.)   The Plaintiffs do not

contend that any of these entities is an intended third-party beneficiary to the insurance contract.

Even if such a contention were made, there is no evidence in the record to support it.

Consequently, no coverage is afforded to any of these entities under the Primary Policy or

Excess Policy.   Moreover, the Primary Policy clearly states that "[n]o person or organization is

---

designation of "Palm Pools, Inc." as the named insured was in error.   As Palm Pools
Management Inc. was the intended insured under both policies, these drafting errors may form a
basis for Scottsdale to seek reformation.

an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations."

Urban Gochoel, the designee for the Palm Pools Entities, testified that Palm Pools Management had been active prior to the policy period of the Primary Policy, but subsequently stopped doing business. (Gochoel Tr., attached as Exhibit A, at 22:13-25:4; 42:3-42:12.) Although ICA/Palm Pools Corp. took over the operations for Palm Pools Management in 2004, the named insured on the Scottsdale Policies remained Palm Pools Management Corp. (*See*, Compl. at Ex. 4.) According to the application for insurance submitted by Warren Cox on behalf of Palm Pools Management, coverage was sought for "Palm Pools Management Inc." for the 2008-2009 policy year. (Ex. A at Ex. 13.) Mr. Cox testified that he received the information for the insurance applications from a representative of Palm Pools, and relied on the representative to inform him if the named insured on the polices should change do to a change in corporate structure. (Cox. Depo. Tr., attached as Exhibit B at 12:19-13:23, 22:9-23:4, 38:6-40:1.) The burden was on the insured to be accurate and truthful in the representations made in the insurance application, and to read the policy and advise Scottsdale if an error was made in the identity of the insured. *See Mutual of Omaha Ins. Co. v. Echols,* 207 Va. 949, 954, 154 S.E.2d 169, 172 (Va. 1967) (noting that under Virginia law, an insured is obligated to answer an application truthfully and fully, and an insurance company is permitted to rely on the representations of its insured in an insurance application). However, the evidence clearly demonstrates that Scottsdale issued its insurance policies to the entity identified by the insured or its agent and had no basis to know that changes had been made to the corporate structure of its insured. In this instance, Mr. Gochoel did not review the insurance application or the insurance

policy to determine whether coverage was being requested by and issued to the correct entity. (Ex. A. at 6:18-7:1.)

While Plaintiffs' argue that the court should deem ICA Palm Pools to be the named insured based on extrinsic evidence presented in connection with an alleged latent ambiguity, this argument lacks merit in the face of all such evidence on this issue.   In their Reply Memorandum in Support of Their Motion for Leave to File an Amended Complaint,  Plaintiffs point out that the entity listed as the named insured in the Primary Policy, Palm Pools Management Corp., was not a legal entity.   (Pl. Reply at 8.)   Thus, Plaintiffs' argue that the Primary Policy contains a latent ambiguity as to which entity was intended to be in the insurance contract, and that extrinsic evidence may be considered on this issue.  *Id*.  The evidence to which Plaintiffs point, however, does not support the conclusion that they urge this Court to draw – that is, that Scottsdale knew that ICA/Palm Pools Corp. was the entity performing the operations that were insured by the insurance contracts and that Scottsdale intended for ICA/Palm Pools to be the named insured under the policies.   On the contrary, the extrinsic evidence supports the conclusion that the parties intended for Palm Pools Management, Inc. to be the named insured under the Primary Policy. As discussed above, the applications for insurance submitted by Warren Cox on behalf of Palm Pools Management listed the entity to be insured as "Palm Pools Management, Inc."  (Ex. A at Ex. 13.) Mr. Cox testified that he received the information for the insurance applications from a representative of Palm Pools, and relied on the representative to inform him if the named insured on the policies should change due to a change in corporate structure.  (Ex. B at 12:19-13:23, 22:9-23:4, 38:6-40:1.)  The Primary Policy was issued to "Palm Pools Management, Corp."   Although there is a slight discrepancy in the name included in the

policy (i.e. "Corp." instead of "Inc."), it is clear that both parties intended that the entity known as <u>Palm Pools Management</u> should be the named insured, not "ICA/Palm Pools."

Plaintiffs argue that the extrinsic evidence demonstrates that Scottsdale "processed claims and extended liability coverage to ICA [Palm Pools Corp.]" in connection with other claims made and asserted in connection with policies issued prior to the Primary Policy and Excess Policy at issue. (Pl. Reply at 9.) This is a factually inaccurate statement. In each of the instances identified by Plaintiffs, coverage was either denied, or a defense was provided to Palm Pools Corporation or Palm Pools Management under a reservation of rights. (*See* Hyden Dep. Tr., attached as Exhibit C, at 14:8-14:19, 15:12-15:14, 15:18-16:3, 16:4-16:13, 17:8-17:16; 20:23-21:8; 21:15-21:18, 22:17-23:7, 23:15-24:5, 24:8-24:15, 25:4-25:16, 25:17-26:10, 26:11-26:19, and 41:10-42:2.) As the reservation of rights letter referenced as Exhibit 4 during Ms. Hyden's deposition clearly shows, the reservation of rights letter was sent to Palm Pools Management Corporation, discusses Policy No. CLS1150025 issued "to Palm Pools Management Corporation," and discusses the coverage analysis as it relates to Palm Pools Management Corporation. (Ex. C at Ex. 4.) The reservation of rights letter also references that the insured advised Scottsdale that "Palm Pools Management Corporation installed the pool" that was the subject of the lawsuit. (Ex. C, Ex. 4 at Lott00014.) Thus, the reservation of rights letter further states that a full defense will be provided "to Palm Pools Management Corporation." (Ex. C, Ex. 4 at Lott00022.) There was no payment made in settlement of this claim. (Ex. C at 36:7-36:11.) Until Scottsdale learned during the course of this litigation that Palm Pools Management Corporation no longer existed or conducted business, Scottsdale had no basis to believe that its policy was issued to a defunct corporation or that the insured had allegedly

intended coverage to be issued to a different entity.[5]   Scottsdale relied solely on the representations of Palm Pools and the agent for Palm Pools concerning the entity that should be included as the named insured.  (Nunnally Tr. attached as Exhibit D, at 21:22-23:11; *See* Ex. A at Ex. 13.)

Scottsdale did not intend to afford coverage to any entity performing lifeguarding or management services, and only agreed to insure Palm Pools Management based on the representations made by the representatives on behalf of Palm Pools.  (Ex. D at 21:22-23:11.) Scottsdale's designee specifically testified that Scottsdale relied on the statements made by Palm Pools in making underwriting decisions and issuing the policies at issue, and was not obligated to verify that the company for which insurance was sought was in fact a legal entity.  Patti Nunnally of Royal Oak Underwriters, the general issuing agent who issued the policy, testified that to her knowledge, Palm Pools Inc. and Palm Pools Management Corp. (the entities for whom coverage was sought) were registered legal entities.  (Ex. D at 19:15-20:3; 21:22-23:11.)  She testified that Scottsdale does not verify the information given to them with regard to corporate status, but, rather, relies upon the insured and/or its agent to provide correct and truthful information in the application.  (Ex. D at 19:15-20:3.)  "If they tell us they're incorporated, we believe them." (*Id.*) Scottsdale was entitled to rely on the representations of Palm Pools in this regard.  *See Mutual of Omaha Ins.,* 207 Va. at 954, 154 S.E.2d at 172.

After Scottsdale declined to issue a liability policy covering lifeguarding and life-saving services to Palm Pools, Scottsdale agreed to provide coverage solely for claims arising out of pool sales, service and maintenance only after the insured assured Scottsdale that it had

---

[5] Any counterclaim for reformation or rescission has not yet been asserted given Palm Pools' late entry in this case as a party with affirmative claims.  Scottsdale fully intends to assert such claims if and when it becomes necessary to do so.

undergone corporate restructuring, and that all lifeguarding and management services were being provided by a separate corporate entity. (Ex. D at 21:22-22:25.) Ms. Nunnally further testified that based upon the insured's representations that Palm Pools Management was a legal entity that was in existence at the time the Primary Policy and Excess Policy was issued and that this was the entity performing pool sales, service, and maintenance, she did not "check behind them." (Ex. D at 23:3-23:4.) Thus, under the circumstances, no valid argument or inference exists that Scottsdale intended for ICA/Palm Pools to be the named insured under the Primary Policy. Moreover, there is absolutely no evidence that any parties intended for coverage to be issued to Palm Pools Service Corp. or Palm Pools Service Corp. of Maryland.

**II.    PLAINTIFFS CANNOT RELY ON THE DOCTRINES OF WAIVER AND/OR ESTOPPEL TO CREATE COVERAGE FOR PALM POOLS SERVICE CORP, PALM POOLS SERVICE CORP. OF MARYLAND AND ICA/PALM POOLS CORP. WHERE NONE PREVIOUSLY EXISTED.**

Plaintiffs appear to allege that even if the unnamed entities were not insureds nor intended to be insureds by Scottsdale, that coverage is created by the doctrines of estoppel and/or waiver. Plaintiffs' argument appears to stem from an unknown and unsupported obligation on Scottsdale to have determined that coverage was requested by and, thus, issued to the "incorrect" entity and/or as a result of Scottsdale's claims handling of unrelated claims presented under prior policies. Virginia law does not permit coverage to be created in this fashion.

The principles of waiver and estoppel have been distinguished by the Virginia Supreme Court. Waiver is a doctrine in law that requires a voluntary action or inaction, in which a party intentionally surrenders a right with knowledge of the facts and circumstances created by that right. *See Employers Commercial Union Ins. Co. v. Great Am. Ins. Co.*, 200 S.E.2d 560, 562 (Va. 1973). Virginia does not recognize a doctrine of "implied waiver." "Since knowing intent to waive is an essential element of true waiver, it can never arise constructively or by

15

implication.  A waiver implied is more precisely an estoppel applied." *Id.*  Estoppel, on the other hand, is a doctrine in equity which enjoins a party whose statements or conduct induces another party, who rightfully relies on such statements or conduct to believe in the existence of a state of facts and act upon that belief, from asserting the existence of a separate state of facts.  *See Contee Sand & Gravel Co. v. Reliance Ins. Co.*, 166 S.E.2d 290, 293 (Va. 1963).

Applying these principles to insurance coverage issues, "[t]he general rule in Virginia is that the coverage of an insurance contract may not be extended by estoppel or implied waiver to include risks not covered by its terms." *Blue Cross & Blue Shield of Virginia v. Wingfield*, 239 Va. 599, 601, 391 S.E.2d 73, 74-75 (Va. 1990) (finding that no coverage was created where insurer sent booklet or brochure which suggested that insured would receive health benefits, even after policy was cancelled, if she had been admitted to hospital while policy was in effect); *Sharp v. Richmond Life Ins. Co.,* 212 Va. 229, 233, 183 S.E.2d 132, 135 (1971); *Norman v. Ins. Co. of North America*, 218 Va. 718, 728, 239 S.E.2d 902, 908 (Va. 1978).  The court must not "bring into being a contract of insurance where there was none," or create coverage where no coverage was provided in the insurance contract.  *Norman*, 218 Va. at 728, 239 S.E.2d at 908; *Insurance Co. of North America v. Atlantic Nat. Ins. Co.,* 329 F.2d 769 (4th Cir. 1964).   Only those provisions in insurance policy as to forfeiture and avoidance on breach of conditions, being for the benefit of the insurer, may be waived by insurer.  *Va. Auto Mut. Ins. Co. v. Brillhart*, 46 S.E.2d 377 (1948); *Rowe v. USF&G*, 375 F.2d 215, 221 (4th Cir. 1967).

An exception to this general rule exists where an insurer, with knowledge of lack of coverage assumes and conducts the defense of a particular claim without either disclaiming liability or giving notice of a reservation of rights. *Maryland Casualty Co. v. Aetna Casualty & Surety Co.*, 191 Va. 225. 234, 60 S.E.2d 876, 880 (finding that insurer was estopped from

denying coverage for an insured's liability to a particular claimant after the insurer continued to defend the action as though the tortfeasor was the assured under its policy, and did not inform the tortfeasor that it had reached the conclusion that its contractual obligation did not include such coverage); *Nationwide Mut. Ins. Co. v. Gentry*, 202 Va. 338, 375, 117 S.E.2d 76, 81 (1960) (holding that [w]hen a liability insurer has knowledge of a breach by the insured of the terms of the policy and continues to defend the case without notice to the insured that it is reserving a right to deny ultimate liability, it is estopped afterwards to avoid liability on the ground of such breach"); *see Rowe*, 375 F.2d at 221; *see also State Farm Fire & Cas. Co. v. Mabry*, 497 S.E.2d 844, 846-47 (Va. 1998). However, that exception is not applicable in the case at bar because Scottsdale never assumed and conducted the defense of ICA/Palm Pools in the instant action. In those cases in which an insurer conducts the defense of a particular claim without giving notice of a reservation of rights, coverage by estoppel can only exist in connection with the particular claim that was being defended. *See, Norman*, 218 Va. at 728, 239 S.E.2d at 908. Coverage is not created for any and all claims that might be made, but only the particular claim defended without a reservation of rights. *See, Id.* Scottsdale cannot be estopped from denying coverage in connection with subsequent claims merely because it defended another claim at some point in the past. (*See* Pl. Reply at 9 (citing instances in which Scottsdale's designee testified regarding claims that were tendered prior to the policy at issue).) Simply put, the actions taken by Scottsdale in connection with prior claims under prior policies is not relevant to the issue of whether coverage is available for the instant claims under the 2008-2009 policy.

Thus, the exception is not applicable in the case at bar because Scottsdale never assumed and conducted the defense of ICA/Palm Pools in the instant action. (*See* Pl. Reply at 9 (citing instances in which Scottsdale's designee testified regarding claims that were tendered prior to the

policy at issue).)   Coverage by estoppel can only exist in connection with the claim that was

being defended.  *See, Norman*, 218 Va. at 728, 239 S.E.2d at 908.  Coverage will not be afforded

to the insured in connection with other separate and distinct claims.  *See, id.*

Because Virginia law does not permit the creation of an insurance contract and/or

coverage by waiver or estoppel, it cannot be said that Scottsdale has taken any action that would

trump the plain language of the insurance contracts at issue.   In the deposition of Georgia

Vanessa Hyden, Scottsdale's designee with regard to claims issues, Ms. Hyden testified

regarding claims made under policies other than the policies at issue, and concerning claims that

are not at issue here.  (*See*, *generally*, Ex. C.)    Many of the claims that were reported to

Scottsdale were denied, and thus no defense was provided to any entity.  (Ex. C at 14:8-14:19,

15:12-15:14, 15:18-16:3, 16:4-16:13, 17:8-17:16; 20:23-21:8; 21:15-21:18, 22:17-23:7, 23:15-

24:5, 24:8-24:15, 25:4-25:16, 25:17-26:10, 26:11-26:19, and 41:10-42:2.)  Although Scottsdale

undertook a defense, under reservation of rights, to the Benitez claim, Scottsdale's clear

reservation of rights letter explicitly stated that Scottsdale was only providing a defense to Palm

Pools Management and had been advised by the insured that work had been performed by that

insured prior to the subject incident, as evidenced by the reservation of rights issued to Palm

Pools Management.  (Ex. C, Ex. 4 at Lott00014.)  In any event, the most recent claim identified

by Ms. Hyden was a claim tendered in 2007 arising under a previous policy.  (Ex. C at 25:4-

25:16.)  There is simply no evidence that Palm Pools provided any coverage, whether a defense

or indemnity, with respect to any other claim under the 2008-2009 primary and excess policies at

issue in this litigation.  (*See* Pl. Reply at 9.)  Thus, it is not relevant whether Scottsdale accepted,

defended or paid on any claims made against ICA/Palm Pools Corp under prior policies issued to

Palm Pools Management Corp. or Palm Pools Inc.  Such actions do not create coverage for any

alleged acts, errors or omissions on the part of Palm Pools Service Corp, Palm Pools Service Corp. of Maryland and/or ICA/Palm Pools Corp.

Furthermore, no evidence has been presented that any party intended Palm Pools Service Corp and/or Palm Pools Service Corp. of Maryland to be covered entities.  There has been no evidence submitted that claims were presented to Scottsdale on behalf of these entities or that Scottsdale handled any claims on behalf of these entities.  As Plaintiffs argued in earlier pleadings, "ICA/Palm Pools Corp. has performed all of the Palm Pools operations for customers since 2004."  (Pl. Reply in support of Mot. for Leave to file Amend. Compl. at 8.)  Thus, at the very least, the claims asserted by Palm Pools Service Corp and/or Palm Pools Service Corp. of Maryland must be dismissed with prejudice.

### III.   THE DESIGNATED OPERATION EXCLUSION BARS ALL COVERAGE FOR PLAINTIFFS' CLAIMS

Even assuming *arguendo* that the Plaintiffs have standing to seek a declaration concerning coverage under the insurance policies at issue, and even if the Court determines that Palm Pools Management, Inc. was the correct insured entity, these policies clearly and unambiguously bar coverage for the claims asserted in the underlying lawsuit. The underlying lawsuit seeks damages due to Palm Pools' alleged negligence in the hiring, training and supervision of lifeguards at Lake Ridge pool, failing to "maintain [automatic external defibrillators ("AEDs")] for use by its lifeguards and/or managers," and in "fail[ing] to train or instruct the lifeguards on how to use an AED." (Compl., Ex. 2, ¶ 28.)   The Scottsdale policies at issue only provide coverage for claims that arise out of "pool sales, service or maintenance." The policies do not provide coverage for claims arising out of the negligent hiring, training, or supervision of lifeguards, or the alleged failure to maintain AEDs for use by lifeguards and/or managers.  In support of this argument, Scottsdale refers to all of the arguments previously raised

in its initial motion to dismiss the complaint, opposition to Plaintiffs' motion for summary judgment, additional brief in support of its motion to dismiss and opposition to Plaintiffs' motion for summary judgment, and all arguments made in open court in connection with the issues raised in these pleadings, all of which Scottsdale incorporates herein by reference.

WHEREFORE, for the reasons stated above, Scottsdale requests that this Court dismiss Plaintiffs' Amended Complaint with prejudice, or alternatively, enter judgment on behalf of Scottsdale as a matter of law.

Respectfully Submitted,

SCOTTSDALE INSURANCE COMPANY
By Counsel:

/s/

Tracie N. Wesner, Esq. (VSB# 68773)
ECCLESTON AND WOLF, PC
10400 Eaton Place, Suite 107
Fairfax, Virginia 22030
(703) 218-5330
(703) 218-5350 (fax)
wesner@ewva.com
*Counsel for Scottsdale Insurance Company*

Stacey A. Moffet
*Pro Hac Vice*
ECCLESTON AND WOLF, PC
Baltimore-Washington Law Center
4th Floor
7240 Parkway Drive
Hanover, Maryland 21076
*Counsel for Scottsdale Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of September, 2011, a true and accurate copy of the foregoing Memorandum of Points and Authorities in Support of Defendant Scottsdale's Motion to Dismiss the Amended Complaint was served via ECF to:

> Matthew T. Sutter, Esquire
> Wade, Friedman, Sutter & Dupray, P.C.
> 616 North Washington Street
> Alexandria, VA 22314
> *Counsel for Plaintiffs Palm Pools Service*
> *Corp.; Palm Pools Corp., of MD; Palm Pool*
> *Mgt., Inc.; and ICA/Palm Pools Corp*

> Scott M. Perry, Esquire
> Thomas W. Mitchell, Esquire
> Bruce J. Klores & Associates, P.C.
> 1735 20th Street, N.W.
> Washington, D.C.  20009
> *Counsel for Deborah Lott, Individually, and*
> *as Personal Representative of the Estate of*
> *Sara Kelsey Lott, Deceased; Douglas Lott,*
> *Individually, and as Personal Representative*
> *of the Estate of Sara Kelsey Lott, Deceased*

                                        /s/
                                        _____
                                        Tracie N. Wesner, Esq. (VSB# 68773)
                                        ECCLESTON AND WOLF, PC
                                        10400 Eaton Place, Suite 107
                                        Fairfax, Virginia 22030
                                        (703) 218-5330
                                        (703) 218-5350 (fax)
                                        wesner@ewva.com
                                        *Counsel for Scottsdale Insurance Company*