IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DEBORAH LOTT, Individually, and as   )
Personal Representative of the Estate of   )
Sara Kelsey Lott, Deceased, et al.,   )
    Plaintiffs,   )        Case No. 1:11cv362
       )
    v.   )
       )
SCOTTSDALE INSURANCE   )
COMPANY,   )
    Defendant.   )

## MEMORANDUM OPINION

This insurance coverage dispute is unusual in the array of parties involved; it includes not only the typical alleged tortfeasor and its insurer—the principals in this coverage dispute—but also the tort claimants, a second alleged tortfeasor, and the second tortfeasor's insurer. The second tortfeasor's insurer has acknowledged that it has a duty to defend and indemnify its own insured, but the first tortfeasor's insurer has denied that it owes either duty to its insured. At issue is whether the tort claimants, the second tortfeasor, and its insurer have standing in federal court to seek a declaration that the insurance policies issued to the first tortfeasor require that insurer to defend and indemnify the first tortfeasor for any damages awarded in the underlying tort suit.

For the reasons that follow, although the tort claimants have standing to participate in this action, the second tortfeasor and its insurer do not, and therefore they must be dismissed.

### I.

There are three groups of plaintiffs in this action: (1) the tort claimants Deborah and Douglas Lott (the "Lotts"); (2) the first tortfeasor Palm Pool Management Inc., Palm Pools Service Corp., Palm Pools Service Corp. of Maryland, and ICA/Palm Pools Corp. (collectively

"Palm Pools"); and (3) the second tortfeasor, Lake Ridge Community Swim Club ("Lake

Ridge"), and its insurer, Harleysville Mutual Insurance Company ("Harleysville").  The Lotts

and Lake Ridge are citizens of Virginia, as are three of the Palm Pools entities; Palm Pools

Service Corp. of Maryland is a citizen of Maryland.  Harleysville is a citizen of Pennsylvania.

The lone defendant, Scottsdale Insurance Company ("Scottsdale"), is a citizen of Ohio and

Arizona.

Scottsdale issued a primary commercial general liability insurance policy and an excess

liability insurance policy to Palm Pools.  The primary policy obligates Scottsdale to "pay those

sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or

'property damage' to which insurance applies." Commercial General Liability Coverage Form

00 01 12 07 § I.1.a, at 1 (Doc. 15, Ex. 3).  It also places on Scottsdale a "duty to defend the

insured against any 'suit' seeking those damages."  *Id.*  The excess policy requires that

Scottsdale "pay on behalf of the insured those sums in excess of the 'Underlying Insurance'

which the insured becomes legally obligated to pay as damages arising out of an occurrence or

accident during the policy period . . . ."  Excess Liability Coverage Form XLS-P-2 (7-96) § I.A,

at 1 (Doc. 15, Ex. 4).  The commercial general policy contains an exclusion that bars coverage

for "all operations not related to pool sales, service, or maintenance."  Designated Operations

Exclusion, Policy Form GLS-103s (9-06) (Doc. 15, Ex. 3).

On July 21, 2008, Sara K. Lott tragically drowned while attending a party at Lake Ridge

Community Swim Club in Occoquan, Virginia.  She suffered hypoxic brain injury after having

been found lying face-down and motionless in an onsite swimming pool.  Her parents, the Lotts,

brought suit in the Circuit Court for Prince William County, Virginia against Lake Ridge and

Palm Pools, the company with which Lake Ridge had contracted to manage the pool (the

"Underlying Lawsuit").[1]  The Lotts alleged in the Underlying Lawsuit that Palm Pools

negligently hired, retained, trained, and supervised the lifeguards who were on duty during the

party, and that Palm Pools negligently failed to provide poolside lifesaving equipment, including

specifically a defibrillator.  The Lotts also alleged in the Underlying Lawsuit that Lake Ridge

negligently hired and retained Palm Pools for pool management services.

After receiving service of the Underlying Lawsuit, Lake Ridge and Palm Pools notified

Harleysville and Scottsdale, their respective liability insurers, and requested that the insurers

undertake the defense of Lake Ridge and Palm Pools and indemnify them for any damages that

might be awarded in the Underlying Lawsuit.  Harleysville, Lake Ridge's insurer, accepted

defense of Lake Ridge and acknowledged a duty to indemnify Lake Ridge for damages Lake

Ridge might have to pay in the Underlying Lawsuit.  Scottsdale denied owing either a duty to

defend or a duty to indemnify Palm Pools.

Thereafter the Lotts, Lake Ridge, and Harleysville brought a declaratory judgment action

in the Circuit Court for Prince William County, Virginia against Palm Pools and its insurer

Scottsdale.[2]  The complaint seeks a declaration that Scottsdale is obligated to defend and

indemnify Palm Pools under its commercial general liability and excess policies notwithstanding

the exclusion that bars coverage for "all operations not related to pool sales, service, or

maintenance."  Scottsdale removed the action to federal court and sought Palm Pools'

realignment as a plaintiff in order to establish the requisite diversity of citizenship.  The

realignment motion was granted by Order dated May 9, 2011, at which time Palm Pools became

---

[1] *See* Second Amend. Compl., *Lott v. Palm Pool Mgmt.*, No. Civ. 04087069-00 (Cir. Ct. for
Prince William Cnty.).  The Underlying Lawsuit has been stayed.

[2] Compl., *Lott v. Scottsdale Ins.*, No. CC 11-04447-50 (Cir. Ct. for Prince William Cnty. Jan. 24,
2011).

a plaintiff and Scottsdale remained the only defendant. *See Lott v. Scottsdale Ins. Co.*, --- F.

Supp. 2d. ---, 2011 WL 2022539 (E.D. Va. May 9, 2011). Scottsdale thereafter moved to

dismiss and now argues, *inter alia*, that the plaintiffs lack standing to seek declaratory relief in

this action.[3]

## II.

Article III, Section 2, clause 1 of the Constitution limits federal court jurisdiction to

"Cases" and "Controversies," and this limitation is implemented, in part, by the judicially created

standing-to-sue doctrine. In essence, the standing-to-sue doctrine focuses on "[w]hether a party

has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that

controversy." *Sierra Club v. Morton*, 405 U.S. 727, 731 (1972).[4] The well-settled test for

standing requires that a litigant must demonstrate an "(1) injury in fact (2) that is fairly traceable

to the defendant's conduct and (3) that is likely to be redressed by a favorable decision." *Retail*

*Indus. Leaders Assoc. v. Fielder*, 475 F.3d 180, 186 n.1 (4th Cir. 2007) (citing *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). To satisfy the injury-in-fact element of

this test, a plaintiff must have "suffered . . . an invasion of a legally protected interest which is

(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."

*White Tail Park v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005) (quoting *Lujan*, 504 U.S. at 560–

61). Thus, as the Supreme Court has noted, standing does not exist where a litigant presents

---

[3] A party's standing to sue may be challenged on a motion to dismiss at any time because "[s]tanding represents a jurisdictional requirement which remains open to review at all stages of the litigation." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 255 (1994). *See also* 13B Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 3531.15, at 310 (3d ed. 2008).

[4] In other words, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *White v. Nat'l Union Fire Ins. Co.*, 913 F.2d 165, 167–68 (4th Cir. 1990) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

"generalized grievances, pervasively shared, and most appropriately addressed in the representative branches of government" or rests a claim on the legal rights or interests of third parties rather than his own. *Valley Forge Christian Coll. v. Americans United for Separation of Church and State*, 454 U.S. 464, 474–75 (1982) (quotation marks omitted).

The parties correctly do not dispute that at least one Palm Pools entity meets the standing requirement in this action.[5] This entity will suffer an injury-in-fact in the event that it has a right to have Scottsdale assume the defense of the Underlying Lawsuit and indemnify it for any damages or losses it may suffer. Scottsdale's refusal to assume Palm Pools' defense in the Underlying Lawsuit quite clearly inflicts a present and continuing injury on Palm Pools insofar as Palm Pools must immediately defend itself without Scottsdale's support. Equally clear is that Scottsdale's refusal to acknowledge a duty to indemnify Palm Pools leaves Palm Pools exposed to pay damages in the Underlying Lawsuit. Nor does it matter that the injury to Palm Pools stemming from Scottsdale's refusal to indemnify will not occur until the Underlying Lawsuit has been reduced to judgment; well-settled precedent makes clear that this prospect of injury is sufficiently imminent to constitute an injury-in-fact. *See, e.g.*, *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 242 (1937) (holding that a dispute between insured and insurer over life insurance policy obligations prior to claim submission was nonetheless "definite and concrete, not hypothetical or abstract").[6] Finally, there is no doubt that both aspects of Palm

---

[5] The complaint in this action names as plaintiffs several Palm Pools entities, and there is a question as to which of these entities is the named insured in the Scottsdale policies. This question and the question of whether the remaining Palm Pools entities (other than the named insured) have the requisite standing to sue in this action will be addressed in a subsequent order. Thus, in this analysis the reference to Palm Pools refers only to the entity found to be the named insured.

[6] In general, it is clear that "one does not have to await the consummation of threatened injury to obtain preventative relief . . . [i]f the injury is certainly impending." *Friends of The Earth v.*

- 5 -

Pools' injury are fairly traceable to Scottsdale's conduct, and that they can be redressed by a favorable decision in this declaratory judgment action. Accordingly, as the parties agree, Palm Pools has standing and is a proper party in this declaratory judgment action.

Instead, the parties' dispute focuses on whether the Lotts, Lake Ridge, and Harleysville have standing to participate in this action.[7] In this respect, because the Lotts on the one hand and Lake Ridge and Harleysville on the other stand on different footing with respect to injury in fact, each is separately addressed.

A.    The Lotts' Standing

Given the rights Virginia law[8] confers on the Lotts as tort claimants, there is no doubt that they satisfy the injury-in-fact requirement and have standing to participate in this action.[9]

---

*Gaston Copper Recycling Corp.*, 204 F.3d 149, 160 (4th Cir. 2000) (en banc) (quoting *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979)).

[7] Not addressed here is whether "declaratory relief is appropriate—the 'prudential' inquiry." *White*, 913 F.2d at 167.

[8] In this circuit, a plaintiff's standing to maintain a declaratory judgment action is a question of federal law, even where, as here, a district court in diversity is called on to adjudicate a state-created right. *See White*, 913 F.2d at 167 ("Federal standards guide the inquiry as to the propriety of declaratory relief in federal courts, even when the case is under the court's diversity jurisdiction."), *quoted in Miller v. Augusta Mut. Ins. Co.*, 157 F. App'x 632, 636 (4th Cir. 2005) (per curiam). It is worth noting that other circuits recognize a different rule. *See, e.g., Comer v. Murphy Oil USA*, 585 F.3d 855, 861–62 (5th Cir. 2009) ("Because this is a diversity case involving state common-law rights of action, plaintiffs must satisfy both state and federal standing requirements."); *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 173–75 (2d Cir. 2005) (stating rule that in a diversity suit "a plaintiff must have standing under both Article III of the Constitution and applicable state law in order to maintain a cause of action").

Although federal law governs the standing issue, Virginia law governs the rights and duties of the parties under the policies in issue in this diversity action because the insurance policies were delivered in Virginia. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938); *Buchanan v. Doe*, 246 Va. 67, 70–71, 431 S.E.2d 289 (1993).

First, Scottsdale's denial of coverage will injure the Lotts if they obtain judgment against Palm

Pools in the Underlying Lawsuit and the judgment goes unsatisfied.  This is so because Virginia

law allows the Lotts to sue Scottsdale directly for the outstanding amount of an unsatisfied

judgment against Palm Pools.  *See* Va. Code Ann. § 38.2-2200(2) (West 2011); *see also Vermont*

*Mut. Ins. Co. v. Everette*, 875 F. Supp. 1181, 1184–85 (E.D. Va. 1995).  Second, and especially

significant for standing purposes, Virginia law confers on tort claimants like the Lotts the right to

sue on the policy as a third-party beneficiary.  *First Sec. Fed. Sav. Bank v. McQuilken*, 253 Va.

110, 114, 480 S.E.2d 485 (1997) ("Like a party to an agreement, a third party beneficiary is

entitled to enforce the terms of the agreement and is subject to defenses arising from that

agreement.").  Virginia law further provides that the Lotts are third-party beneficiaries "from the

moment of injury" under Virginia Code § 55-22.  *See USAA v. Nationwide Mut. Ins. Co.*, 218

Va. 861, 867, 241 S.E.2d 784 (1978) (citing *Davis v. National Grange Insurance Co.*, 281 F.

Supp. 998 (E.D. Va. 1968)).

The Lotts' status as third-party beneficiaries of the policies and their right to sue

Scottsdale directly for any unsatisfied judgment against Palm Pools makes unmistakably clear

that Scottsdale's denial of coverage effects a concrete, substantial, and immediate injury on

them.  No less clear is that this injury is fairly traceable to Scottsdale's denial of coverage, and

that a judgment declaring that Scottsdale owes Palm Pools a duty to defend and indemnify would

---

[9] Where a defendant insurer has made any form of Article III challenge to a plaintiff's presence in an insurance coverage declaratory judgment action—standing is one such challenge—this circuit has not expressly treated the challenge as one to injury-in-fact but rather as one to Article III justiciability writ large.  *See White*, 913 F.2d at 167 (applying *Haworth* test of "whether the dispute 'is definite and concrete, touching the legal relations of parties having adverse legal interests'") (quoting 330 U.S. at 239–40); *Miller*, 157 F. App'x at 635 (applying *Maryland Casualty* test for justiciability generally).  The question presented here concerns standing specifically and therefore requires applying standing doctrine, although cases discussing Article III justiciability will inform the standing analysis.

redress the injury. It follows, therefore, that the Lotts have standing under Article III to participate as party plaintiffs in this action.

This conclusion remains correct notwithstanding that the Lotts' injury requires reducing the Underlying Lawsuit to judgment before it materializes. In this respect, the Supreme Court has held that insurance coverage disputes are "manifestly susceptible of judicial determination" under Article III even though no insurance claim has been submitted and no judgment triggering insurance obligations has issued. *See Haworth*, 300 U.S. at 242. Both apposite and controlling here is *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, where the Supreme Court held that a tort claimant had Article III standing to seek a declaration in federal court that the tortfeasor's insurer owed the insured tortfeasor a duty to indemnify, even though the underlying tort suit had not yet been reduced to judgment. 312 U.S. 270, 273 (1941).[10] Consistent with this, the Fourth Circuit has concluded that a tort claimant's declaratory action seeking a coverage declaration against an insurer falls within Article III despite the lack of an underlying tort judgment against the tortfeasor. *See, e.g.*, *White*, 913 F.3d at 168 (holding that the lack of judgment against a tortfeasor "does not make the action any less definite and concrete" against the insurer of the tort claimant's employer).[11] The same conclusion is compelled here.

---

[10] *Maryland Casualty* establishes that the proper measure of a plaintiff's interest in a declaratory judgment action against a tortfeasor's insurer is not the likelihood of recovering damages against the tortfeasor in the underlying tort suit, but rather the plaintiff's rights if such damages were awarded. Put another way, for purposes of determining standing in an insurance coverage declaratory judgment action, a judgment in the underlying action against the tortfeasor is assumed to be sufficiently imminent, and the harm to the plaintiff's ability to recover determines whether the plaintiff's injury in the declaratory judgment action is constitutionally cognizable.

[11] *See also Miller*, 157 F. App'x at 637–38 (concluding that "as a matter of federal law, [the tort claimant] had standing in her own right to pursue her declaratory judgment action against [the tortfeasor's insurer], without regard to whether [the tortfeasor] was a party to the action") (citing cases); *Everette,* 875 F. Supp. at 1184–85 (holding that dispute between tortfeasor's insurer and tort claimant was justiciable notwithstanding tortfeasor's absence from litigation).

B.      Lake Ridge's and Harleysville's Standing

By contrast to the Lotts, Lake Ridge and Harleysville—the second tortfeasor and its

insurer—cannot establish that they have suffered an injury-in-fact as a result of Scottsdale's

denial of coverage to Palm Pools.  Unlike a tort claimant, a joint tortfeasor's stake in the

outcome of a coverage dispute between a different tortfeasor and that tortfeasor's insurer is

generally too attenuated and remote to fall within Article III.  Not surprisingly, the parties have

identified no case, nor has any been found, holding that a joint tortfeasor has standing to

participate in a declaratory judgment action concerning the duties to defend or indemnify owed

to the other tortfeasor by its insurer.[12]

Here, the remoteness of any injury in fact to Lake Ridge and Harleysville is quite

apparent.  First, even assuming that a judgment against Palm Pools issues in the Underlying

Lawsuit, injury to Lake Ridge and Harleysville depends on several more factual contingencies.

Damages must be awarded against both Palm Pools *and* Lake Ridge.  Further still, only if Lake

Ridge pays more than its pro rata share would Lake Ridge be entitled to seek contribution from

Palm Pools,[13] and then only if Palm Pools cannot contribute its share of damages would

Scottsdale's refusal to indemnify Palm Pools introduce the prospect of an injury to Lake Ridge

and Harleysville.  Unlike the Lotts, Lake Ridge and Harleysville have no right under Virginia

law to seek contribution directly against Scottsdale.  And since Virginia law considers only the

_____

[12] One case from this circuit involved a joint tortfeasor who was not dismissed as a party to an
action seeking a declaration of insurance coverage between another tortfeasor and its insurer.  In
*Penn-America Insurance Co. v. Coffey*, two joint tortfeasors appealed from a district court's
decision to decline jurisdiction in their declaratory action against another tortfeasor's insurer, but
the sole question presented on appeal was whether the district court had erred in declining to
exercise *discretionary* jurisdiction.  368 F.3d 409, 410, 412 (4th Cir. 2004).  The question of
Article III subject-matter jurisdiction was therefore neither presented nor decided.

[13] *See* Va. Code Ann. § 8.01-34 (West 2011).

Lotts and not Lake Ridge to be third-party beneficiaries of the insurance policies, Lake Ridge and Harleysville have no currently vested right to insurance proceeds from Scottsdale. The only present injury Lake Ridge and Harleysville assert—inability to settle the case without sufficient insurance money in the "pot"— plainly does not qualify as an injury-in-fact, and no case has been cited or found to the contrary.

In sum, with no substantial interests at stake, Lake Ridge and Harleysville have suffered no injury-in-fact and thus have no dog in this insurance coverage hunt. Lake Ridge's and Harleysville's lack of standing to sue in this case requires that they be dismissed.

III.

Accordingly, for these reasons, while Palm Pools and the Lotts may remain parties to this action, Lake Ridge and Harleysville must be dismissed for lack of standing.

An appropriate Order has already issued. *See Lott v. Scottsdale Ins. Co.*, No. 1:11cv362 (E.D. Va. Aug. 26, 2011) (Order) (Doc. 59).

Alexandria, Virginia
September 14, 2011

T. S. Ellis, III<br/>
United States District Judge